UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cr-00119-JPH-MKK |
| | ) | |
| GENARO TAPIA, | ) | -03 |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION TO REVOKE RELEASE**

Defendant Genaro Tapia is charged by indictment with conspiracy to distribute controlled substances. Dkt. 1. After he was arrested in the District of Arizona, the Magistrate Judge there held a detention hearing and ordered him released. The Magistrate Judge granted a stay of Mr. Tapia's release while the government sought review by this Court. *See* dkt. [224]. For the reasons that follow, the government's motion is **GRANTED** and the Court orders Mr. Tapia detained.

## I.
## Facts and Background

The indictment charges Mr. Tapia and nineteen other defendants with conspiracy to distribute controlled substances. Dkt. 1. At Mr. Tapia's initial appearance on June 16, 2025, the government moved for pretrial detention. 2:25-mj-9232-ESW-2 dkt. 5 (D. Ariz.). At the detention hearing on June 25, 2025, the Magistrate Judge found the government had shown that Mr. Tapia is a "serious flight risk" but that conditions of release could reasonably assure his appearance—though "at a minimum reasonable minds can differ about that."

Dkt. 242-1 at 28–29. The Magistrate Judge ordered Mr. Tapia released on conditions but stayed the release pending the government's seeking review in this Court. 2:25-mj-9232-ESW-2 dkt. 13 (D. Ariz.).

On June 26, the government filed a "Motion for Reconsideration of Release Order." Dkt. 224. The Court then ordered the government to file a supplemental filing specifying the relief sought and addressing the 18 U.S.C. § 3142(g) factors. Dkt. 230. The government responded that it is seeking revocation of the Arizona Magistrate Judge's revocation order under 18 U.S.C. § 3145(a) and Mr. Tapia's transportation to this district. Dkt. 231.

The Court has considered the government's motion and supplement, dkt. 224; dkt. 231; Mr. Tapia's response, dkt. 252; the government's prior detention memo, Ariz. dkt. 7; Mr. Tapia's initial motion for pretrial release, Ariz. dkt. 8; the Arizona Pretrial Services Report, dkt. 224-2; and the transcript of the detention hearing, dkt. 242-1. The Court has determined that no hearing is necessary. *See United States v. Cox*, No. 1:16-mj-96-MJD, 2016 WL 614333 at *1 (S.D. Ind. Feb. 16, 2016) (citing *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991)).

## II.
## Legal Standard

After a Magistrate Judge orders a defendant released pending trial, the government may move to revoke that release order; the district court shall determine that motion "promptly." 18 U.S.C. § 3145(a). A motion for revocation of a Magistrate Judge's release determination is reviewed *de novo* by

2

the district court.  *United States v. Stewart*, No. 1:23-cr-123-JRS-MG, 2023 WL 8430429, *1 (S.D. Ind. Dec. 5, 2023) (citing *Torres*, 929 F.2d at 291–92).

"[A] finding of either danger to the community or risk of flight will be sufficient to detain the defendant pending trial."  *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985).  Because Mr. Tapia has been indicted for an offense under the Controlled Substances Act punishable by a prison term of ten years or more, there is a "rebuttable presumption that there are no conditions [of release] that will assure his appearance and the safety of the community."  *United States v. Wilks*, 15 F.4th 842, 846 (7th Cir. 2021) (citing 18 U.S.C. § 3142(e)).  "This places a light burden of production on the defendant, but the burden of persuasion always rests with the government."  *Id.* at 846–47.  Therefore, the government bears the burden of proving by a preponderance of the evidence that the defendant poses a risk of flight, and of proving by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community.  *Portes*, 786 F.2d at 764–65 (citing 18 U.S.C. § 3142(f)(2)(B)).

In determining whether the government has met its burden, the Court weighs factors identified in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct

and other factors; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

### III.
### Analysis

The parties agree that the rebuttable presumption of pretrial detention applies in this case.  *See* Ariz. dkt. 7 at 4; Ariz. dkt. 8 at 5.  Mr. Tapia thus needed to produce some evidence to rebut the presumption that he should be detained pending trial, *Portes*, 786 F.2d at 764, and he has done so here, *see* dkt. 242-1; Ariz. dkt. 8.  *Wilks*, 15 F.4th at 846 (explaining that the defendant's burden of production to rebut the presumption is "light").

Still, the statutory presumption does not disappear but is considered together with the § 3142(g) factors in determining whether Mr. Tapia should be detained.  *See Wilks*, 15 F.4th at 846–47.

### A. 3142(g)(1) and (2): The nature and circumstances of the offense charged and the weight of the evidence

Mr. Tapia is charged with being a member of a conspiracy to distribute large quantities of controlled substances.  Dkt. 1.  The government indicates that its factual proffer about the nature and circumstance of the offense are supported by pole-camera surveillance, wiretaps of co-defendant Eric Robinson's phone, and evidence seized by the DEA.  Dkt. 224 at 2–3; dkt. 231 at 6–8.

The government has proffered that Mr. Tapia assisted codefendant Jonhy Chacon–Hernandez with transporting "large amounts of methamphetamine, fentanyl, heroin, and powder cocaine from Phoenix, Arizona to Indianapolis."

Dkt. 224 at 2; *see* dkt. 1 at 4. That included, in April 2025, "the delivery of 100 pounds of methamphetamine from Phoenix to Eric Robinson in Indianapolis." Dkt. 224 at 2. And in May 2025, Mr. Tapia "drove from Louisville, Kentucky to Indianapolis and collected approximately $70,000 in currency from Robinson." *Id.* at 3. Law enforcement officers then stopped Mr. Tapia "as he drove from Louisville to Phoenix with $12,000 in currency." *Id.*

The government's proffer shows Mr. Tapia's "high-level involvement" in the conspiracy, dkt. 231 at 6, rather than his being "at best, a transporter who did not control the quantity, type, or location of drug transactions," dkt. 252 at 4. Regardless, transporting drugs is indispensable to a conspiracy like the one charged here, and Mr. Tapia travelled "frequently from Phoenix to Louisville and occasionally to Indianapolis." Dkt. 224 at 3–4. Indeed, he was entrusted with handling large quantities of controlled substances and cash, including collecting $70,000 in U.S. currency from Mr. Robinson, who is alleged to have been the leader of the drug-trafficking organization in Indianapolis. Dkt. 1 at 8 ¶ 15, 9 ¶¶ 22–24; dkt. 231 at 4-5. And in May 2025, when Mr. Robinson had $70,000 in drug proceeds to be picked up, Mr. Tapia retrieved the funds by removing doors from the Subaru where it was stashed and transporting them to Louisville. Dkt. 231 at 7. The government's proffered evidence showing Mr. Tapia's important and trusted role in the conspiracy undermines his argument that he "is someone who just goes where he is told." Dkt. 252 at 4.

This charged offense is serious and involves Mr. Tapia's possession of large quantities of illegal drugs and drug proceeds, which is underscored by the

10-year statutory mandatory minimum sentence that Mr. Tapia faces.  The nature and circumstances of the offense and the weight of the evidence therefore increase the risk of flight and suggest that no conditions of release would reasonably assure Mr. Tapia's appearance when required.  *See United States v. Butron*, No. IP05-0242M-01, 2005 WL 1657113 at *4 (S.D. Ind. June 28, 2005).

### B. 3142(g)(3) and (4): The defendant's history and characteristics and the danger posed by release

Mr. Tapia is a United States citizen, has lived in the same house for about five years, has a girlfriend and a baby on the way in Arizona, and owns property in Arizona, so he has some community ties.  Dkt. 224-2 at 2; Ariz. dkt. 8 at 3.  He also has worked for about three years as a driver on an as-needed, by the load basis for a trucking company.  Dkt. 224-2 at 2; dkt. 242-1 at 6–7.  These facts may provide Mr. Tapia some incentive to not flee.  Neither Mr. Tapia's family commitments nor his job in Arizona, however, prevented his travel between Phoenix, Indianapolis, and Louisville to further the conspiracy. *See* dkt. 331 at 8.

Moreover, those ties must be weighed against the government's proffered evidence that would give Mr. Tapia strong incentive to flee, including his involvement in the charged conspiracy and the volume of drugs and drug proceeds it involved.  Mr. Tapia argues that the fact that he did not flee after being stopped by law enforcement in May 2025 and being told that he could be arrested shows that he is unlikely to flee now.  Dkt. 252 at 4–7.  That weighs in his favor and the Court has considered that conduct.  But at that point Mr.

Tapia had not been indicted and did not know the exact serious offense he would be charged with having committed; the nature, extent, and strength of the government's evidence against him; and the substantial term of imprisonment he faces if convicted.[1]

Mr. Tapia also lives in close proximity to Mexico, has connections to his girlfriend's family in Mexico, and has traveled frequently to Mexico. Dkt. 224-2 at 2; *see* dkt. 252 at 5. The Court views these facts in conjunction with the numerous facts that give him strong incentive to flee. The Court also considers that through his alleged role in the conspiracy, Mr. Tapia has had access to large quantities of cash, which would give him the means to flee. His release in Arizona near the border and potential access to large amounts of cash therefore show that no conditions of release would reasonably assure Mr. Tapia's appearance as required. *See Portes*, 786 F.2d at 765 ("[A] finding of either danger to the community or risk of flight will be sufficient to detain the defendant pending trial."). So, under the § 3142(g) factors considered with the statutory presumption, Mr. Tapia has not offered sufficient evidence to overcome the "evidence suggesting that [he] might flee the jurisdiction." *Id.*; *see Wilks*, 15 F.4th at 846–47.[2]

---

[1] Mr. Tapia argues, without elaboration, that he "knew he would be charged" and that "the charges would be very serious, exposing him to a lengthy prison sentence." Dkt. 252 at 7. Even if that were true in a general sense, the indictment has changed the calculus by formally bringing a serious charge that carries severe penalties, including a statutory mandatory minimum 10-year term of imprisonment.

[2] When the Maricopa County Sheriff's Office executed a search warrant at Mr. Tapia's residence on June 13, 2025, they found "a Ruger AR-style assault rifle, an AR-style Core assault rifle, a black Century Arms AK-47 assault rifle, and a 9 millimeter FN Herstal pistol." Dkt. 231 at 4. The Sheriff's Office noted that a guest named

The Court therefore concludes that the government has shown by a preponderance of the evidence that conditions of release cannot reasonably assure Mr. Tapia's appearance as required.  18 U.S.C. § 3142(g).

## IV.
## Conclusion

The government's motion to revoke Mr. Tapia's release order is

**GRANTED**.  Dkt. [224]; dkt. [231]; 18 U.S.C. § 3145(a).  The United States Marshals Service shall arrange for Mr. Tapia's transportation to this district.

**SO ORDERED.**

Date: 7/8/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

Stephanie said that she was visiting from Kentucky and had purchased the firearms there.  Dkt. 252 at 3.  Because the risk of flight supports detention regardless of the firearms, the Court does not address whether Mr. Tapia possessed or knew about the firearms.